The Honorable Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. You may be seated. Mr. Proctor, are you ready? Your Honor, and may it please the Court, Ryan Proctor on behalf of Appellant Brennan Smith. This case presents a merits issue and a mootness issue. On the merits, both parties agree that the Bureau of Prisons erred in calculating the start date of Mr. Smith's sentence. The Bureau based its calculation on a finding that Mr. Smith was under arrest on Muscatine County, Iowa charges at the time he entered federal custody. But Mr. Smith was never arrested on those charges, as the warden now admits. Rather, he was arrested only on Scott County charges, and those charges were dismissed before he entered federal custody. The warden now argues on appeal that Iowa retained primary jurisdiction because Muscatine County should have arrested Mr. Smith, but failed to. But on top of other issues, this theory is plainly forfeited and barred by the Chenery Doctrine. On mootness, the warden's argument that- Mr. Proctor, this is just a purely- as an initial matter, the Chenery suggestion seems right to me. I haven't been able to find a case that applies the Chenery Doctrine in this situation. Have you? Yes. So Arrington v. Daniels, which we cite in our reply brief, applies the Chenery Doctrine in a 2241 calculation claim. And more broadly, why I think that makes sense is that, as the Supreme Court said in Wilson, when we're reviewing a calculation claim in habeas, we're reviewing the computations of the Bureau of Prisons. Well, that seems – I mean, it seems absolutely right to me in principle that this is a Chenery problem. Can I turn to the mootness question? Absolutely. That I think is the hard question. Okay. So I want to ask you sort of two framing questions. Sure. Do you agree that, sitting here today, we as the habeas court cannot reduce Mr. Smith's term of supervised release, that we do not have the power to do that? Yes. Okay. And do you agree that all of these arguments that I was over – they miscalculated, I spent six months thinking I might be in prison longer than I should have been, thank goodness I was not. All of those arguments, and you make the argument they might bear on how long his supervised release, do you agree that all of those arguments could be considered by the sentencing court in a motion to reduce his term of supervised release? Not – likely not. Okay. So – Why not? But – and to be clear, I still think that that wouldn't affect – I understand. Sure. But – so this court held in United States v. Pregent that in a motion to reduce your term of supervision, you cannot raise – you cannot challenge the calculation of your sentence because that sounds in habeas. And where habeas applies – But he's not challenging the calculation of his sentence. He's saying all of the things that – not all, but many of the things you say in opposing the government's mootness argument. You say, like, look, I – again, thank goodness we fixed this before I spent longer in prison than I should have been because that would have been really terrible. Right. But I spent this period, A, having to fight about that, and I shouldn't have, and I spent this period of time fearing that might happen, and I shouldn't have. And by the way, it almost happened, and that shouldn't have. And, Judge, for all of those reasons, I'm not asking you to recalculate my sentence. You can't do that. I get it. But I'm asking you to reduce my term of supervised release to account for all of those things. Is there any reason you couldn't say that? So, respectfully, I do think that even in that context you are in a way challenging the calculation because you're challenging when the start date began. Because if the government's right that his sentence didn't start until June of 2019, that means that he was not entitled to that credit until his state sentence was vacated. So any anxiety he experienced is not inequitable in any way. Whereas, if Mr. Smith, that anxiety and harm is only inequitable if he should have been credited that time the entire time, which requires a determination that his sentence started when he said it started and not the current finding that the Bureau of Prisons has made. But I would also like to stress that I don't think this case, even if you disagree with me on that, I don't think this case is moot, even if he could go directly there. Because the availability of an alternative forum doesn't change the fact that this manner of proceeding can still redress Mr. Smith's injury. So to turn to Townsview Jarvis, that this exact kind of argument that, well, you don't strictly need to come here, was made in dissent and was disregarded by the majority. It seems important to me. I mean, I agree with you, but it seems important to me that the majority didn't disregard it because it said that's wrong. I mean, when I read Towns, there's language in Towns that seems to assume that the proceeding was necessary to seeking release. I mean, and the dissent says that's wrong. You're getting Maryland law wrong. That's not how Maryland law works. But it seems to me to be a premise of the majority opinion in Towns that it was required. Sure. So two points. One is, I mean, to be clear, even if that's how you read Towns, I think for the reasons I've already outlined, this is the exclusive remedy. But I would disagree with that reading of Towns. So I don't remember which footnote it is. But one of the footnotes points out, says, look, we know that you could just go directly to the you could just go directly to the parole board. But we think it's futile for you to do so. So Utah, because because the town's courts seem to think that if you did it without going to the habeas court, you'd lose. But lose simply because they might disagree with you. There was no indication that you would actually be barred. But the claim would not actually be cognizable in that. So let me ask you, let's go after Towns. Let me ask you about Sierra Club and the cases after that, which read Towns to say you need it for it to be a necessary antecedent to getting the relief. I mean, regardless of whether that is or not the best reading of Towns, there are at least two post Towns published opinions of this court that understand Towns to require that the proceeding you're seeking now is a necessary antecedent to the relief that you'd want from the later court. How is this a necessary antecedent? Sure. So to begin with, it is a necessary antecedent because I believe, you know, under Pregent, the habeas channeling rule requires that any chance of the calculation go to the habeas court. But even if that's not the case, it's a necessary antecedent in the sense that the finding is necessary before you can get discretionary relief. And I think that that's all that that language means. So to give you another kind of example of where this kind of logic applies, consider standing to appeal. So if you're denied compassionate release on a, you know, a threshold claim, you fail to exhaust, and then the very next day, the Fourth Circuit issues a decision that shows the district court was dead wrong, published opinion. You could file a motion for reconsideration in the district court, which could then grant you all the relief you want. Or you could file an appeal, and on appeal, all you would be able to get is a reversal on the threshold exhaustion issue. But the fact that you could, you have that forum that could give you everything doesn't deny you standing to seek the more limited forum of the court of appeals. I have a question. Just back to the basics so I understand your argument. What is the exact injury you are now advancing? Previously it was, I need credit for time I deserve to get. The injury here is exactly what? And then the next question is, please, what exactly is the relief you want? Sure. So the ultimate injury in this case is a inequitable term of supervised release. Now the immediate... So it's not the harm and anxiety he endured during prison, wondering if he was going to get credit for the time he thought he was entitled to get. Well, that's what makes it inequitable. Okay, so the, I'm sorry, back to the injury. Sure. So that's the ultimate, the ultimate injury is a term of supervised release that has been rendered inequitable by this calculation error. Now the immediate harm Mr. Smith is challenging is the miscalculation, in this suit, is the miscalculation. And that itself I don't think needs to be an Article III injury on its own in the same way that if an agency decision is going to ultimately give me a concrete Article III harm, but they made a procedural violation, they failed to give me the statutory right to comment, I can go to court and say my injury that I want this court to resolve, to redress, is my failure to get my statutory right to comment, which will then ultimately help me redress my injury of whatever the agency action is going to do to me. Okay, so what relief are you requesting? As I read your reply brief, it's a change in the commencement of the sentencing date. So I'm looking at the Bureau of Prisons document, which is 49-2. Yeah. And on the second page it says, are you looking for the BOP to issue or change the date computation began from June 21, 2019 to March 1, 2019? Is that the relief? To December 6, 2018. All right. Your reply suggests it would be the first date that he entered state custody, which is in March. So the relief is to change this BOP document to say the date computation began is December 6, 2018? Yes, that's correct. Because that was the date his federal sentence was imposed. What does that do to redress the alleged injury? So by establishing that Mr. Smith was always entitled to the time he was credited, it allows him to go to the sentencing court and say, all of the harm of this expectation of unlawful imprisonment is a basis to reduce my supervised release term. Why couldn't he do that today? He couldn't do that today because it would require him to challenge the Bureau of Prisons computations, which can only be done through habeas, as this court held in the United States v. Pregent. But as I was discussing with Judge Heitens earlier, even if you disagree with that, I still think the fact that you can proceed in the manner I've outlined doesn't make this case moved. So you want us to change the date and then demand the case to the district court to make your argument that we should recalculate his release conditions? Well, he would have to go to the sentencing court to seek that, not the district court in Virginia. I didn't say Virginia. I mean, the sentencing court. Yes, yes, that's right. Right, that's right. So that's all relief you want? From this court, that is correct. Can I ask you two more mootness questions?  So you cite these cases that say there's this heavy burden to show mootness. Yeah. It appears to me that those are all voluntary cessation cases that have that language. Do you agree with that? That have the… The heavy burden to show mootness. Right, so the… Well, do you agree with me as a factual matter, all the cases that you quote for the heavy burden standard are voluntary cessation cases? I think that's probably right. And do you agree this is not a voluntary cessation case? Yes. So to be clear, if I can…  To clarify, I do think that once Mr. Smith is out of prison and, you know, this, the fact that he got his prior custody credit, it is incumbent on Mr. Smith to identify an injury, a continuing collateral consequence that is the basis of his suit. I still think it's the case, though, that, you know, the Supreme Court has been very careful to say that standing and mootness are distinct. 100%. And the burden is not the same. And then the other one, you cite these cases from the 7th, 9th, 11th, and D.C. circuits about mootness. Yes. Do you agree those are all cases where the prisoner, in fact, served too long in custodial incarceration? Yes, I do. So I… And this is not an individual who served too long in custodial incarceration. Yes, that's correct. I'm citing them for the limited purpose that there's no per se rule that really smooths things. Sure, but, I mean, I guess you could imagine a rule that says it's different if the person literally spent too long in prison. You could imagine a rule. However, I would say… Because I think, I mean, this may start to collapse the distinction between justiciability and the merits, but a person who literally spent too long in prison strikes me as having a very good argument we should reduce their term of supervised release, don't you think? I would agree. However, I would also stress that I think that Towns forecloses that kind of distinction because it is based… The reasoning of that case is that the court will not speculate as to success. Sure. It's simply a question of is it possible to grant, for the sentencing court to grant relief, and it's not for this court to prejudge how the sentencing court will exercise its considerable discretion. Wasn't the alleged, or not alleged, but the stress and anxiety that Mr. Smith suffered while he was incarcerated due to the fact that he thought he was going to serve too much time and not due to the fact that a Bureau of Prisons record said his sentence started on X date or Y date? It was his anxiety that he was going to be away from his friends and families for longer than he should, and that's the same anxiety he could present to the sentencing court today to possibly ask for a reduction in supervised release term. It is the anxiety, but the anxiety is only inequitable because of the fact that because of that calculation that he was going to be released too late, absent an intervening change. So you think he'll have a stronger argument for a reduction of supervised release if he says, the Fourth Circuit said, in fact, that I was in primary federal custody and my start date should have been sooner than it was. Right. So as I understand it now, if Mr. Smith were to go to the sentencing court today and say, make the kinds of arguments I'm suggesting he could make, the sentencing court would say, well, you said that you had this anxiety, however, the Bureau of Prisons said this is when your date, your sentencing date started, so it was entirely lawful that you were going to be released on this later date at that time. I cannot challenge, I cannot question that. I have to simply take what the Bureau of Prisons said as given. And therefore, there is no inequity in the anxiety that you discussed. Can the sentencing court even consider this anxiety if ultimately he didn't serve any time? Is that something they can consider under 3583? I believe so, because under Concepcion, the United States, the Supreme Court was very emphatic that unless a factor is explicitly ruled out, it is within the discretion of a court modifying a sentence to consider anything that's relevant. And Johnson was explicit that equitable factors that make a, that made the execution of a sentence too harsh can be the basis of a reduction. So, yes, it's not as powerful a claim as actual overtime served, but it presents the same kind of equitable considerations of your sentence was too harsh as executed. And I say I'm out of time. All right. Thank you, Mr. Proctor. Mr. Chauhan. May it please the Court. On behalf of the warden, traditional habeas is about challenging the improper fact or length of a sentence. And in this case, we no longer have either. And therefore, this case is moot. There is not a cognizable habeas injury here. And I would like to walk the court through the three factual iterations of this case and how they have historically tracked on to standing. They are an iteration where Mr. Smith claimed he was going to or is going to over serve time, where he claimed he did over serve time, and now where we stand today where he claims he did not over serve time. When he filed his 2241 petition, he said, BOP is doing something that's going to cause me to over serve my time. That's a cognizable habeas claim that he had standing to bring. His opening brief said, I did over serve my time, and that implicates the circuit split that he flags in his brief, that we've talked a little bit about where someone says, I over served my time, I'm on supervised release, and there's a standing question or a mootness question there. But we're outside of that realm. We're in the realm of Watkins from the Seventh Circuit, where someone comes to court as a habeas petitioner and is saying, I agree, I didn't over serve my time. The sentence that was imposed upon me by Illinois was precisely the amount of time that I served in custody. And that person may have an FTCA claim. They may be able to go to the sentencing court and ask for an equitable, as my friend asked on the other side, 3583E reduction, considering the 3553A factors, but what is not cognizable is a – Can I ask you about a word that you just said that sort of pricked my ears up? You said he may be able to go to the sentencing court and ask for a reduction. I certainly agree the sentence – if I may, you meant the sentencing court might not give it to him. I totally get that. What is the government's view about whether the sentencing court can consider this claim absent this court doing something? We think it can because – Yeah. Yes. So the government, if he files that in the sentencing court, the government is not going to argue he is not allowed to do this. Well, I have to go tell my friends in the central district of Illinois about that. But, yes, I think the position is, to your question, Your Honor, about what the 3583E court can do. It has to consider the 3553A factors, and one of those factors is the circumstances of the defendant. And so the defendant can totally go to that court and say, look, the 3553A calculus's claim is changed from when you sentenced me before. I endured this terrible stress. I had ulcers. I had psychological harm. We're not trying to minimize that at all. And so he can present those facts to the sentencing court. But what about your friend's argument that what's going to happen then is the government or the district court is going to say, but that's essentially a collateral attack on the date that his sentence started, and I'm not allowed to do that as the sentencing court? I don't think that's right, Your Honor. He cites the Johnson case, which is a case where there was a predicate vacature, and then we were talking about a 3583E reduction, but nothing in Johnson says that you have to get that predicate reduction. And the underlying fact in answer to Judge Boardman, your question, what's the injury here? What's the harm? What did you suffer? His psychological harm, his stress, that all existed. He can put an affidavit before the district court. Now, the question of whether that was legally justified or not, I think that's a separate question. But what I think fundamentally what my friend on the other side is asking the court here today to do is to issue an advisory opinion so he can hold it up and run to the sentencing court and say, look, the Fourth Circuit says the BOP messed up. And if he was still incarcerated and had a threat of over-serving time, he has standing for that. I'll interrupt you and just ask a practical question. Sure. Have you reached out to the Bureau of Prisons to ask them whether they can change this document to say the date computation began is the date the sentence was imposed? Has anyone tried to do that? I have reached out to the Bureau of Prisons. That's how I learned about the document you have in front of you. Bureau of Prisons' position is that they think they got it right, and we defend that position. Now, I think they got it right for a wrong reason initially. That's to the merits, of course, when we're talking about primary jurisdiction and intent to surrender. But I think the BOP is going to abide by an order of the federal court. I think the question is whether or not that there's Article III jurisdiction for the court to enter such an order in a traditional habeas proceeding where we're talking about the fact or duration of the sentence. That's what habeas is fundamentally about. So your argument really supports what the petitioner is asking for because you said that they're going to abide by what a federal court says. Basically, what you're saying is unless we tell them you got it wrong and change the date, they're not going to do anything. That's why he's here. You just explained exactly why he's here and perhaps why it's not moot. That's basically your client. You said, look, get with it. You did make a mistake. Everybody makes mistakes. You're not holier than thou. We're here because you won't make a thing. You tell us, well, he's here because they're not going to do anything, I guess, until you tell them. That's exactly what he's saying. He needs the chit from this court to say this bolsters my argument why there are equitable reasons why you should amend that. That's what he's saying. So you basically disagree with that? May I explain why I disagree with that, Your Honor? Yeah, go ahead. I think we have to focus on that Article III and standing are not about injury or redressability out in the world, devoid and untethered for the nature of the cause of action. So what we just said about redressability, we agree that he says he wants an order from this court saying BOP, amend your records. Do 3 plus 2 equals 5 rather than 4 plus 1 equals 5. We disagree that you should enter that order, but that's on the redressability. Why? Because we're in a habeas proceeding. We're a court of justice too, right? That's correct. Can you answer that?  Because the court of justice, as this court has acknowledged in cases like Appalachian Voices, even when there's a hard and frustrating question on the merits, the court's still bound by the jurisdictional rules. This is not a hard question. You haven't said anything else yet that really mirrors this case. It's not hard at all. Your Honor, we think it is an easy case, and the court should find that it lacks jurisdiction. And the reason why is because as a habeas case, what a petitioner needs to be able to say is I am going to over-serve my time or I did over-serve my time. And what he really wants is validation of alternative legal theory supporting the correct and proper duration of his sentence. Everyone agrees it is uncontested in this appeal that he served the proper amount of time as imposed by Illinois. And he's currently serving the proper amount of time of supervised release as imposed by the sentencing court. And what he's really asking for is an advisory opinion that the BOP should have done a different legal rationale, a different way to calculate the correct and proper release date. And that way he can get some, as he says, equitable. What he wants is a 3583E reduction from the sentencing court. And we think when you're operating and evaluating this in a traditional context of habeas, which the Supreme Court says is an extraordinary remedy, we're not just supposed to jump right to it. We know from Jones v. Hendricks that habeas is not a cure-every-error statute or cause of action. So you gave us three categories. Does the government have a position on Category 2? I know your view is this is not Category 2. But what is the government's position on Category 2? I think our – So this is the he spent too long in jail. He actually spent too long incarcerated. I think that's a much harder question than Category 3. I agree. I think we commend to the court the Herndon opinion from the Fifth Circuit and the Berkey opinion from the Third Circuit. And we think you ought to follow those if this was a Category 2 case. I understand it's not a – no one's saying this is a Category 2 case. And so I think – and this is important. And Category 2 might be divided into subcategories of – and we mentioned this in our brief – when the sentencing court is the same as the habeas court versus here we have a situation where there's an entirely different circuit, an entirely different sentencing court bound by other circuit precedent. And there's this bifurcation of the sentencing court and the habeas court aren't the same. And so maybe in a Category 2 case where you have it be one and the same, that makes a little bit more sense. Then it's literally just a question of what docket number he has to file it under. If the sentencing court and the habeas court are the same, we're literally debating what docket number you file it under. Right. I mean I think that that's one distinction. Again, still, if you were to treat this as a Category 2 case, that's still a relevant distinction on this case. Can I ask you a question about the merits? You may, please. It strikes me that the real federalism foul here is BOP just deciding of its own initiative to conclude that Iowa screwed up by giving this guy to the federal government. Why the heck did they do that? Why did BOP do anything? It just seems like everything that went wrong in this case is when some bureaucrat at BOP decided all on their lonesome to decide, you know what? I think Iowa screwed up what Iowa meant to do here, so let's send him back to Iowa. To be a little – Which you now concede is wrong. You now concede the basis on which BOP did was wrong. So they reached out, decided that Iowa got something wrong, and did it on a basis that the government now concedes was incorrect. Let me try to answer that, and I want to be fair to the people that work hard at BOP that try to get it right even when they get it wrong. They saw the PSR, his Illinois PSR, and they said, look, it looks like according to paragraph, I think it's 49 of the PSR, left-hand side, it looks like this guy had an arrest in Muscatine County. On 2-22-17, and that for the BOP I think triggers the question, oh, we need to reach out to the federal probation officer in Illinois and confirm this. And that's when the federal probation officer in Illinois said, yes, that is correct. He was arrested on the Muscatine County charges when he was in Scott County custody. But Iowa's allowed to make a – I mean I totally agree with the government's point. You make this point that from the constitutional perspective, there is no such thing as Muscatine County. There is the sovereign state of Iowa. Iowa can make a mistake if Iowa wants to make a – I just don't understand why a federal executive official is deciding that Iowa screwed something up. Well, it's not just that the BOP says so and therefore Iowa has to take it and eat it. We have two indicia in this case on the merits of that BOP actually kind of agreed, and what we're talking about is really what's Iowa's intent, what's all of Iowa's intent. And the two indicia we have are, one, that Muscatine County filed its detainer with Scott County. Sure. So that's one indication of its intent. And the second indication is when BOP said, we think Iowa – you sent him to us and you shouldn't have, and we're going to send you back to Iowa, Iowa took him back. But that doesn't tell you anything about their intent when they – so it's Iowa's intent at the moment they surrender him. It's not Iowa's intent later, right? That is true, but of course evidence that happens after the fact that intent is formed can be used to inform what the intent was. Scott County dismissed the firearms charges in favor of federal prosecution and released him to the United States Marshals so that the federal government could prosecute him for the initially charged state crimes. Without – they didn't issue him pursuant to a writ. They just released him to the United States Marshals. Everything you've said is correct, Your Honor. Yes, we agree with that. That's what happened. Why isn't that enough? Because we are dealing with a unitary sovereign. It would be an easy case if there were two charges, one from Iowa and one from Minnesota, and Iowa arrested him on the Iowa charge. What happens when two components of this Iowa sovereign don't communicate properly or one makes a mistake? I think you have to look at the overall intent. I believe the Seventh – I'm sorry, the Ninth Circuit has an opinion. I want to say it has Gill in the name that we talk about in our brief about some of the factors that you look at. Why wasn't that a massive federalism foul? Like, you're literally asking us to adjudicate whether Scott County screwed up or whether Muscatine County screwed up. I mean, what's wrong with the following principle? Everybody agrees that the people who handed this dude over from Scott County were agents of the state of Iowa acting in their official capacity as agents of the state of Iowa who have dismissed all charges against him, and they just turned him over to the federal government. And, I mean, why isn't the right answer? As between the federal government and the state of Iowa, it is over. The state of Iowa has – now, the people in Muscatine might have a bone to pick with the people of Scott, and there might be some internal Iowa intramural state government discussions after this to how to make sure this doesn't happen again. But why doesn't it make far more sense from a basic federalism treating the state as a unitary sovereign, as you say, that the moment that an authorized – these are, like, rogue people here. This is, like, literally the sheriff's office or whatever in Scott County. They were authorized to surrender someone. The argument is just that they screwed up vis-a-vis internal Iowa governments. And why isn't the right answer to say from a federal court's perspective, the federal government's perspective, that is all internal Iowa stuff, and if Iowa concludes that the way this went down shouldn't have happened, they can establish procedures to make it doesn't happen again. But as between the federal government and Iowa, when you gave an unconditional surrender order to BOP, that establishes federal custody, and we are not going to police the internal operations of the Iowa state government. Two answers, Your Honor. First, at the beginning of your question, you said you're – we're here to adjudicate this tough federalism question. We don't think you should. We don't – we think – No, I know. I know. This is all maybe a hypothetical. Not reach the hard question, Your Honor. That's maybe the first answer I have. The second answer is you said dismiss the charges, and I think the question is dismiss what charges. Fair enough. And so, yes, we totally agree that if everything – if the only thing that had happened here was that there were only the Scott County charges and there's the Commonwealth attorney – I forget what they're called in Iowa – signs the order as Judge Boardman says it. Look, we want this to go to federal court. Then that would be totally right, but we still have to look at the sovereign as the whole, and the sovereign as the whole includes Muscatine County and its charges. And so I think that's the best answer that I can give to the question, Your Honor. I also want to pick up a little bit on a discussion that Judge Hytens initiated earlier about the other cases on the Article III question. And my friend on the other side conceded this, and I think that that's really all you need to know to be able to decide this case is that all of the mootness questions – all the mootness cases, including towns – and I would direct the court to footnote 9 of our brief where we go through this and footnote 3 of towns where it says the problem here is someone has a fundamental error being alleged. That's about improperly extending the sentence in some way, and fundamentally that's what did not happen here. And for that reason, because of the nature, standing and mootness are tied to and tethered to the nature of the cause of action that's alleged. Judge Gregory, by saying this court lacks jurisdiction, you are not closing all the courthouse doors to Mr. Smith. You're simply saying go to the correct courthouse under the cognizable cause of action. Go file a 3583e motion. Go file an FTCA claim alleging the harm that you suffered from this miscalculation. And so we submit to the court that the court should dismiss this appeal for lack of jurisdiction. Alternatively, my friend on the other side has raised Munsingwear vacature. We think that there would be some on a jurisdictional basis. If the court is concerned and you want to make sure that a jurisdictional ruling on this court doesn't foreclose him from going to the 3583e court and trying to raise the arguments that he wants to raise, we don't object to a Munsingwear vacature on jurisdictional grounds. And we think this court's opinion, I believe in Palmer, provides some support for that. If there are no other further questions, I thank the court for its time. Thank you. Mr. Proctor, you have some time. Thank you. Four quick points. First, the warden's appeal to formalism here is entirely misplaced. Mr. Smith seeks traditional habeas relief. His request, his principal request for relief has not changed. It is entirely conventional habeas relief to issue an order to the Bureau of Prisons to revise its calculations. Well, his principal prayer for relief, and I looked at the record specifically for this, was to get out when he was supposed to get out. So he got that. Can I switch gears? Sure. I only have a few minutes. How has your client performed on supervised release? And how, if at all, will that factor into any future motion to modify the supervised release conditions when you advance this argument with or without a favorable ruling from this court? Sure. I mean, I'm not aware of all of his circumstances. I know that an additional condition was added to his term of supervised release. Do we have to consider that? Do we have to consider the state of his performance on supervised release to date when we evaluate mootness? Only for the extremely limited purpose of determining whether it's not at all possible for the sentencing court to grant a reduction. So if he'd done something that rendered him ineligible statutorily for a reduction.  But other than that, Talens instructs we do not speculate as to the likelihood. And I would like to just move back briefly to push back and say the first sentence of his prayer for relief is grant an order changing my – the calculation of my start date. And it is black-letter habeas law that if the relief you request – This is at JIR 11? Yes. If the relief you request can remedy a collateral consequence on appeal even if it's not detention, that is a live claim. So, for instance, habeas does not exist to give people the right to vote, right? But if you are challenging your conviction on habeas and you're released and a collateral consequence of your conviction is the right to vote, then your appeal is live. Even if we read that request for relief in isolation as you do and didn't read it within its broader context as I think we have to, where does your client allege that his harm was due to this improper calculation date and not the fact that he was not going to get released on time? So the first time that that's alleged is in the response to the motion to dismiss. But that's entirely within bounds. As both circuit and Supreme Court precedent holds, when you have an intervening event that renders the initial – that addresses the initial harm, you are allowed to address for the first time whether there's any continuing consequences that harm you. So that happened in the United States v. Juvenile Mail. That happened in towns. And there are other cases we cite in our brief. I would also like to stress the point that the remedy doesn't have to be exclusive for there to be mootness, right? Mootness serves a limited purpose. It's not do we think this is the best or most efficient or most direct way to get relief. It's just can your relief – can your injury be redressed by this mechanism? If on its own this would be sufficient, adding an alternative pathway can't make the case moot. And that's true. And, again, I would point to towns as establishing that point. But if you really think it has to be exclusive, my friend on the other side completely disregarded pregent, right? And in that case, this court explicitly held miscalculation claims sound in habeas. Therefore, they cannot be raised in a motion to reduce supervised release. And one last point, if bifurcation matters, again, in towns, that was a much larger bifurcation problem because you were dealing with a state court, not a different federal court. And with that, I ask this court to reverse and direct BOP to revise Mr. Smith's commencement date. Thank you, Mr. Proctor. Mr. Proctor, I note that you are a court opponent. I just on behalf of the Fourth Circuit want to express our gratitude for taking these cases. We depend upon lawyers like yourself to do that, and we appreciate it very much. And also, obviously, we recognize Mr. Johan's able representation of his client as well. We'll come back with counsel to proceed to our next case.
judges: Roger L. Gregory, Toby J. Heytens, Deborah Lynn Boardman